**William HARRIS, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

**Murrell Fitzgerald, Intervenor.**

**No. 82–1278.**

District of Columbia Court of Appeals.

Argued Dec. 14, 1983.

Decided Feb. 13, 1986.

---

8. This court adopted the *Strickland* test in *White* v. *United States,* 484 A.2d 553, 558 (D.C.1984).

Paul D. Crumrine, Washington, D.C., for petitioner.

Karen J. Krueger, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

Ann Marie Hay, Washington, D.C., for intervenor.

Before FERREN and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Landlord-petitioner, William Harris, seeks review of a decision of the District of Columbia Rental Housing Commission (the Commission) affirming the February 17, 1981 decision of the Rent Administrator of the District of Columbia Rental Accommodations Office (RAO). Petitioner contends on appeal that (1) the decision is not supported by substantial evidence in the record, as not all the evidence presented by petitioner was considered; (2) the agency erred in awarding treble damages beyond the 120-day period required by statute for administrative review and decision; and (3) the agency erred in awarding a refund and treble damages based upon a finding of a substantial reduction in related services.

Petitioner urges this court to reverse the RAO's order and to remand the case for reconstruction of the complete record. We affirm.

On July 14, 1979, tenant-intervenor Murrell Fitzgerald and petitioner entered into a lease agreement for an apartment located at 1364 Constitution Avenue, N.E. The lease provided for a monthly rent of $185 plus an extra $15 surcharge during the winter months. Clause 18 of the lease agreement stated that oil, heat and water were to be paid by petitioner.

On February 8, 1980, tenant Fitzgerald filed a petition with the RAO, pursuant to the Rental Housing Act of 1977 (the Act),[1] alleging that (a) the current monthly rent was in excess of the lawful rent ceiling; (b) petitioner was neither properly registered with the RAO, nor possessed a housing business license or a certificate of occupancy; and (c) the rental unit was not in substantial compliance with District of Columbia housing regulations. The tenant's complaint further alleged that the 1978 Registration Statement filed by the former landlord of the premises indicated that electricity, heating and cooking gas were to be included in the rent, but that petitioner, in violation of his own lease agreement, did not provide such services.

A hearing was held on September 8, 1980, and by a decision issued February 17, 1981, the Rent Administrator found that petitioner was in violation by (a) increasing the rent in excess of the maximum allowable rent ($165), and (b) unlawfully reducing related services which were formerly included in the rent, thereby requiring tenant to pay for utilities which previously had been the responsibility of petitioner. In addition, the Rent Administrator found that the property had not been in substantial compliance with housing regulations since August 8, 1979, and that petitioner did not possess a valid certificate of occupancy or housing business license and was,

therefore, not properly registered with the RAO.

Petitioner was ordered to pay utilities for the unit and to refund the rents charged in excess of the rent ceiling (the difference between $185 and $165) over a period of twenty months, from July 1979 through February 1981, and to reimburse the tenant for amounts paid for utilities and the $15 winter month surcharge. Treble damages plus an interest rate of 5¼% per annum were assessed on the full amount of all awards. It was further ordered that as a penalty for noncompliance with housing regulations, the rent ceiling would be rolled back to the February 1973 base level of $148, pending petitioner's acquisition of a certificate of occupancy, housing business license, proper registration with the RAO and the abatement of housing code violations.

Petitioner-landlord appealed this decision to the District's Rental Housing Commission. A hearing was held before the Commission on May 24, 1982, and by order of September 29, 1982, the Rent Administrator's decision was affirmed. This appeal followed.

### I

Petitioner challenges the Commission's decision on three grounds. He first argues that the Commission erred in not remanding the case for further proceedings below because the Hearing Examiner of the RAO made her decision without considering all of the evidence submitted.

At the close of the hearing on September 8, 1980, the Examiner informed both sides that the record would be held open until September 19, 1980, with a subsequent extension until September 23, 1980, for the submission of post-hearing memoranda. On September 19, counsel for petitioner submitted two affidavits, both executed by the former landlord of the premises. The

---

1. Anthony Bonaparte, another tenant of petitioner, also filed a complaint with the RAO. During the course of the proceedings, however, he signed a settlement agreement with petitioner. This appeal, therefore, is limited to a review of tenant Fitzgerald's complaint.

first affidavit, dated September 19, 1980, stated that the previous owner had erroneously indicated on his 1978 Registration Statement that utilities were included in the rent and that, during the term of his ownership, all tenants paid their own utilities. The former landlord also indicated that he was prepared to testify and produce documents verifying his statement. The second affidavit dated January 17, 1979, prepared for submission in another case, also contained a statement by the former owner indicating that tenants of the rental unit paid their own utility charges. Neither of these two affidavits was listed in the Examiner's itemized recitation of "Evidence Considered," nor discussed in her "Evaluation of Evidence." Petitioner complains that the Examiner's failure to consider these affidavits when rendering her decision constitutes reversible error. We disagree.

■ An administrative decision should rest solely upon evidence appearing in the public record of the agency proceeding. D.C.Code § 1–1509(b) (1981). Ordinarily, the record closes upon termination of the hearing below. However, the record may be held open for the post-hearing submission of memoranda. *See Monaco v. District of Columbia Board of Zoning Adjustment,* 407 A.2d 1091, 1102 (D.C.1979) (where it was held to be proper for an agency to consider material submitted post-hearing which did not contain new evidence, but rather was merely a memorandum of conclusions which could be drawn from evidence already included in the record). New evidence submitted post-hearing may not be admitted into the record and, therefore, may not provide a basis upon which an agency may issue a decision. *Carey v. District of Columbia Unemployment Compensation Board,* 304 A.2d 18, 20 (D.C.1973).

■ In the present case, the record was closed for evidentiary purposes on September 8, 1980. The Examiner gave both par-

ties until September 19, 1980, to submit post-hearing memoranda only. Petitioner's counsel submitted the affidavits on September 19, 1980, eleven days after the record was closed. Since the documents submitted post-hearing contained new evidence not a part of the public record, we hold that the Examiner did not err in excluding them from her consideration.

■ Moreover, the record reveals that contents of the second affidavit, although not specifically mentioned in the Examiner's decision, were in fact discussed at the hearing. Apparently, however, the Examiner did not consider the contents of the affidavit particularily persuasive and found for the tenant. In rendering a decision, the Examiner is entrusted with a degree of latitude in deciding how he shall evaluate and credit the evidence presented. Thus, not only does an Examiner have the discretion to reasonably reject any evidence offered, *Kopff v. District of Columbia Alcoholic Beverage Control Board,* 381 A.2d 1372, 1386 (D.C.1977), but he should not be bound to list each and every piece of evidence considered when rendering a decision. *See generally Roumel v. District of Columbia Board of Zoning Adjustment,* 417 A.2d 405, 408–409 (D.C.1980). Thus, we hold that the omission of the affidavit from the Examiner's list of "Evidence Considered" does not warrant reversal.

■ In an administrative appeal, we will not substitute our judgment for that of the agency, as long as there have been adequate findings on each contested issue of fact, the decision rationally follows from the facts, and there is sufficient evidence to independently support each finding. D.C. Code § 1–1509(e) (1981); *Roumel v. District of Columbia Board of Zoning Adjustment, supra,* 417 A.2d at 407; *Spevak v. District of Columbia Alcoholic Beverage Control Board,* 407 A.2d 549, 553 (D.C. 1979). From an examination of the evidence considered,[2] it is clear that the Exam-

---

2. The following evidence was considered by the Hearing Examiner:

(1) testimony of tenant and Housing Inspector Burger;

iner based her decision on substantial and probative evidence presented at the hearing which rationally support her findings and conclusions. The landlord's Registration Statement, prepared and sworn to by the previous owner, clearly stated that utilities were to be included in the rent. In addition, there was testimony to this effect at the hearing. Furthermore, even the lease agreement between petitioner and tenant Fitzgerald provided that oil, heat and water were to be paid by petitioner. Thus, we are satisfied that the agency's decision was based upon substantial evidence and there is no cause for reversal.

## II

Petitioner also argues that the Rent Administrator's delay in rendering its decision and order violated the procedural requirements of D.C.Code § 45–1695(a) (Supp. VII 1980). Petitioner contends that this section precludes the Rent Administrator from awarding treble damages beyond the 120-day period during which the agency is bound to issue a decision and order. Urging reversal, petitioner claims that since this case involves a continuing violation for which sanctions were imposed throughout the duration of the violation, the agency's delay aggravated his total liability and resulted in prejudice to him.[3] Therefore, he argues that the treble damages award of the excess rent collected by the landlord from the beginning of the tenancy, July 1979, up until the date of the late decision, February 1981, was improper and should be set aside. We disagree with petitioner's argument and believe that he has misconstrued the requirements of § 45–1695(a).

At the threshold, we note that petitioner's argument presupposes that the Rent Administrator's order in the present case is controlled by the limitations of § 45–1695(a). This section provides:

The Rent Administrator or his or her designee shall consider adjustments allowed by sections 45–1691, 45–1692 and 45–1693, or a challenge to a section 45–1687 adjustment, upon a petition filed with him or her by the landlord or tenant of such rental unit. Such petition shall be filed with the Rent Administrator on a form provided by the Rent Administrator containing such information as the Rent Administrator or the Commission may require. The Rent Administrator or his or her designee shall issue a decision and an order approving or denying, in whole or in part, each petition within one hundred and twenty (120) days after such petition is filed with the Rent Administrator. Such time may be extended only by written agreement between the landlord and tenant of such rental unit.

The 120-day limit on administrative review is closely circumscribed to apply only to those decisions and orders which approve or deny (1) a petition to increase the rent ceiling to allow for capital improvements under § 45–1691; (2) a petition to make adjustments in the rent ceiling to reflect changes in related services under § 45–1692; (3) a tenant's challenge to a landlord's petition for an adjustment in the rent ceiling by the landlord under § 45–1687; or

(2) documents from the D.C. Permit and Business License Branch, D.C. Department of Housing and Community Development, Housing Regulation Division, D.C. Fire Department, Fire Prevention Division;

(3) tenant's lease with landlord;

(4) prior and present owner's Registration Statement;

(5) Washington Gas Light Company and Potomac Electric Power Company statements of tenant;

(6) copies of court documents involving same parties and some involving the same building;

(7) tenant's complaint;

(8) copies of letters sent to landlord and tenant by the RAO regarding the subject petition.

3. The RAO first scheduled a hearing for April 17, 1980. At the close of this hearing, the matter was continued until May 22, 1980. The tenant did not receive notice of this date, so the hearing was reset for July 23, 1980. On July 23, it was discovered that the record of the April 17 hearing had been lost and that a *de novo* hearing would have to be conducted on August 18, 1980. This hearing was again postponed because counsel for the tenant was unavailable in August. The tenant's complaint was finally heard on September 8, 1980.

(4) a hardship petition to increase the rent ceiling under § 45–1693.[4]

■ In this case, the petition filed with the RAO was a tenant complaint, not a tenant challenge to a rental increase sought by the landlord under § 45–1687. Tenant's petition complained that petitioner-landlord had increased the rent without registering the house with the RAO, without obtaining a housing business license, and without correcting numerous housing violations. The complaint also alleged that petitioner had decreased services which were previously provided without seeking a corresponding adjustment to the rent ceiling. Tenant Fitzgerald's petition did not seek a reduction in the rent ceiling as a result of a decrease in services under § 45–1692. He complained only that the current rent charged was in excess of the prevailing rent ceiling. Since the tenant's complaint was not filed pursuant to any of the four causes of action to which § 45–1695(a) exclusively applies, we hold that the Rent Administrator in this case was not compelled to render a decision and order within the prescribed period of 120 days.

This conclusion, however, does not end our inquiry. The length of proceedings before administrative agencies has long been a matter of major concern to the courts. *M.G. Davis & Co. v. Cohen,* 256 F.Supp. 128 (S.D.N.Y.), *aff'd,* 369 F.2d 360 (2d Cir.1966); *Gearhart & Otis, Inc. v. SEC,* 121 U.S.App.D.C. 186, 188, 348 F.2d 798, 800 (1965); *FTC v. J. Weingarten, Inc.,* 336 F.2d 687, 691–92 (5th Cir.1964), *cert. denied,* 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 796 (1965); *Deering Milliken, Inc. v. Johnston,* 295 F.2d 856 (4th Cir.1961). Therefore, it has been suggested that, even though the RAO does not operate under a statutory mandate to issue a decision and order within a prescribed period of time, this court, as a matter of equity and fairness, should intervene to "adjust ... relief to the exigencies of the case in accordance with the equitable principles governing judicial action." *Perry v. District of Columbia Department of Human Resources,* 326 A.2d 249, 253 (D.C.1974) (quoting *Ford Motor Co. v. NLRB,* 305 U.S. 364, 373, 59 S.Ct. 301, 306, 83 L.Ed. 221 (1939)).

■ Because of the severity of the treble damages award in this particular case, the temptation to assay the prejudice resulting from the length of the proceedings is considerable. Admittedly, the damages awarded would have been less onerous had the agency's decision been rendered sooner. Based on the facts in this case, however, we do not reverse the Rent Administrator's award. In instances of unwarranted delay in administrative proceedings, the proper remedy is a court order expediting the proceedings, *see* D.C.Code § 1–1510(a)(2) (1981), not a reversal and remand ordered by an appellate court. The record in this case is barren of any suggestion that petitioner at any time complained of the pace of the proceedings or sought such relief. Consequently, petitioner may not now claim prejudice from the delay.

### III

Finally, petitioner claims that the Commission committed error in awarding treble damages for the reduction in related utility services. Petitioner argues that under D.C.Code § 45–1699.24(a) (1980 Supp.) treble damages may only be awarded in situations where the rental fee charged exceeds the appropriate rent ceiling. Petitioner alleges that the Commission lacked the statutory authority to award treble damages for the value of services reduced on the ground that such costs were not payments of "rent" in excess of the rent ceiling within the meaning of the Act. He claims that the only statutorily authorized remedy for

---

**4.** We note that in the instant case the Rent Administrator found petitioner to be in violation of § 45–1689(a)(1)(A), (B), (C) (Supp. VII 1980) of the Rental Housing Act of 1977. Remedies for violations of this type are governed by the provisions of § 45–1699.24(a) which does not impose upon the Rent Administrator a requirement to issue a decision and order within a prescribed period.

a reduction in related services is a rollback of rent.

This contention was not raised in the landlord's administrative appeal to the Commission. Consequently, it "may not [now] form the basis for overturning the [Commission's] decision on review." *John D. Neumann Properties, Inc. v. District of Columbia Board of Appeals and Review,* 268 A.2d 605, 606 (D.C.1970).

*Affirmed.*